IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **TRI-REALTY COMPANY,** | : | CIVIL ACTION |
| *Plaintiff*, | : | |
| | : | |
| v. | : | |
| | : | |
| **URSINUS COLLEGE,** | : | |
| *Defendant*. | : | No. 11-5885 |
| | : | |

PRATTER, J.                                                                           DECEMBER 9, 2015

## OPINION

Tri-Realty Company ("Tri-Realty") sued Ursinus College ("Ursinus"), alleging that the continuing effects of No. 6 fuel oil discharged from underground storage tanks ("USTs") on Ursinus's property violate the Resource Conservation Restoration Act ("RCRA"), 42 U.S.C. §§ 6901-6992k, the Clean Water Act ("CWA"), 33 U.S.C. §§ 1251-1387, and several state laws. After almost 50 months, Tri-Realty moves for leave to file a third amended complaint in order to now add a claim for relief under the Pennsylvania Storage Tank and Spill Prevention Act ("Storage Tank Act"), 35 Pa. Stat. Ann. § 6021.101 to .2104. For the reasons explained below, the Court will deny Tri-Realty's Motion for Leave to File a Third Amended Complaint.

### I. PROCEDURAL BACKGROUND

Tri-Realty filed this lawsuit more than four years ago, on September 16, 2011, and then filed its first Amended Complaint (Docket No. 4) on December 1, 2011. After Ursinus moved to dismiss the Amended Complaint, but before the Court issued a ruling on that motion, Tri-Realty filed a Motion for Preliminary Injunction (Docket No. 16). The Court held a three-day preliminary injunction hearing in April 2013. The preliminary injunction was denied. The Court then granted in part and denied in part Ursinus's Motion to Dismiss (Docket No. 7) on

1

November 21, 2013, converting the motion into a Motion for Summary Judgment on Tri-Realty's federal claims. The motion to dismiss the state law claims was held in abeyance while the Court determined whether the federal claims would survive summary judgment.

On March 26, 2014, following a scheduling conference, the Court issued the First Scheduling Order (Docket No. 54). The order provided Tri-Realty with a March 28, 2014 deadline for filing a motion to amend the Complaint.[1] Tri-Realty filed a Motion for Leave to File a Second Amended Complaint (Docket No. 55) on March 28, 2014, and the Court heard oral argument on the motion on April 21, 2014. The parties filed a stipulation on April 28, 2014 which allowed Tri-Realty to file a Modified Amended Complaint (Docket No. 60) on June 5, 2014. The Court then heard the parties' arguments on Ursinus's motions for summary judgment (Docket Nos. 64-65) and granted in part and denied in part the motions. The Court retained jurisdiction over the case, as several of the federal claims survived.

Following the Court's ruling on the motions for summary judgment, the parties submitted proposed scheduling orders, and the Court held a scheduling conference on October 16, 2015. Tri-Realty's proposed scheduling order (Docket No. 102-1) expressed, for the first time, an intention to seek leave to file a third amended complaint, now to add a claim under the Storage Tank Act. The Court's Second Scheduling Order (Docket No. 103) directed Tri-Realty to file any motion for leave to amend its complaint no later than October 23, 2015. Tri-Realty did so. Ursinus opposes that motion.

## II.   LEGAL STANDARD

Amendments to pleadings are governed by Rules 15 and 16 of the Federal Rules of Civil Procedure. *See E. Minerals & Chems. Co. v. Mahan*, 225 F.3d 330, 340 (3d Cir. 2000);

---

[1] Having already filed one amendment to the complaint, any further amendment required leave from the Court or written consent from the opposing party. *See* Fed. R. Civ. P. 15 (a).

*Chancellor v. Pottsgrove Sch. Dist.*, 501 F. Supp. 2d 695, 701 (E.D. Pa. 2007). Under Rule 15(a)(2), a party may amend a pleading with leave from the Court, and "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Under this standard, the party opposing the amendment has the burden of showing "prejudice, bad faith, undue delay, or futility." *Chancellor*, 501 F. Supp. 2d at 700.[2]

### III. DISCUSSION

The Court concludes that under the language of the Courts Scheduling Order of October 16, 2015, Tri-Realty's Motion for Leave to File a Third Amended Complaint is not untimely. However, under the Rule 15 standard, Tri-Realty's Motion for Leave to File a Third Amended Complaint should be denied.

---

[2] However, Rule 16 governs a party's attempt to amend a court's scheduling order, including any deadlines set for amending pleadings. *See* Fed. R. Civ. P. 16(b)(4). "Rule 16(b) was intended to 'assure[] that at some point both the parties and the pleadings will be fixed, by setting a time within which joinder of parties shall be completed and the pleadings amended.'" *Chancellor*, 501 F. Supp. 2d at 701 (quoting from the advisory committee notes to the 1983 amendments to the Federal Rules). Under Rule 16(b), if the court's scheduling order deadline for amending a pleading has passed, the party seeking leave to amend bears the burden of showing "good cause" for its failure to comply with the scheduling order. *Id*.

While the Third Circuit has not explicitly ruled on the correct procedure in the application of Rules 15(a) and 16(b), other district courts in this circuit have ruled that, once the court's scheduling order deadline for amending a pleading has passed, a party moving for leave to amend must first satisfy Rule 16's "good cause" requirement before the court may consider the motion to amend under the Rule 15 standards. *Hildebrand v. Dentsply Int'l, Inc.*, 264 F.R.D. 192, 198 n.8 (E.D. Pa. 2010); *Chancellor*, 501 F. Supp. 2d at 701; *Componentone, L.L.C. v. Componentart, Inc.*, No. 02: 05CV1122, 2007 WL 2580635, at *2 (W.D. Pa. Aug. 16, 2007). The Third Circuit has at least indicated that such an application is correct. *See Race Tires Am., Inc. v. Hoosier Racing Tire Corp.*, 614 F.3d 57, 84 (3d Cir. 2010) (affirming the district court's denial of a motion for leave to amend while stating that the moving party "acknowledge[d] on appeal that it had the burden to demonstrate good cause and due diligence.")

Here, Tri-Realty has at least met the Court's last day deadline for filing a motion for leave to amend, but this hardly guarantees the Court's favorable consideration of the motion, as to which the seriatim nature of Tri-Realty's amendment efforts will be weighed with great import, in some ways tantamount to seeking Tri-Realty's "good cause" for wanting yet another bite at the apple.

Under Rule 15(a)(2), leave to amend should be freely given, however it is not unbounded. *Dole v. Arco Chem. Co.*, 921 F.2d 484, 487 (3d Cir. 1990). "A district court has discretion to deny a request to amend if it is apparent from the record that (1) the moving party has demonstrated undue delay, bad faith, or dilatory motives, (2) the amendment would be futile, or (3) the amendment would prejudice the other party." *Hill v. City of Scranton*, 411 F.3d 118, 134 (3d Cir. 2005). Ursinus argues that Tri-Realty has demonstrated undue delay and that the addition of the claim under the Storage Tank Act would be futile.[3]

### A. Undue Delay

While the passage of time alone is an insufficient ground to deny leave to amend, "at some point, the delay will become 'undue,' placing an unwarranted burden on the court, or will become 'prejudicial,' placing an unfair burden on the opposing party." *Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d 267, 273 (3d Cir. 2001) (quoting *Adams v. Gould Inc.*, 739 F.2d 858, 868 (3d Cir. 1984)). "Delay becomes 'undue,' and thereby creates grounds for the

---

[3] Ultimately, under the Rule 15 analysis, the Court finds that Tri-Realty has demonstrated undue delay, and thus its motion for leave to amend will be denied. Although not the predicate for the Court's ruling, there is merit in mentioning the Ursinus futility argument. Regarding the futility of the amendment, Tri-Realty's Storage Tank Act claim very likely may be futile, but regardless of its futility, it would certainly require considerable time and expense of doubtful usefulness from both the Court and Ursinus in order to litigate the claim.

For example, while one section of the statute expressly excludes the types of heating oil tanks at issue in this case, *see* 35 Pa. Stat. Ann. § 6021.103, another section states that those who opt into the Pennsylvania Insurance Department's Heating Oil Tank Program ("HOT Program") "shall comply with applicable provisions of this act and of regulations promulgated under this act." 53 Pa. Stat. Ann. § 6021.704(e)(2). Ursinus argues that the "applicable provisions" are confined to the financial provisions of Chapter 7, while Tri-Realty argues that nothing in the statute expresses an intent by the Pennsylvania legislature to limit the applicable provisions to those dealing with financial provisions; rather, by receiving the benefit of insurance coverage on its otherwise exempted tanks, Ursinus was obligated to comply with the enforcement provisions in the Storage Tank Act. Neither party has cited (nor has the Court discovered) a single case analyzing whether a party opting into the HOT Program subjects itself to liability under the Storage Tank Act. While the Court will not deny the motion for leave to amend based on futility, it is clear from the parties' briefing that the feasibility, let alone the merit, of the Storage Tank Act claim is far from obvious, and litigating the claim would require significant effort, time, and expense from the parties and the Court.

4

district court to refuse leave, when it places an unwarranted burden on the court or when the plaintiff has had previous opportunities to amend." *Bjorgung v. Whitetail Resort, LP*, 550 F.3d 263, 266 (3d Cir. 2008) (citing *Cureton*, 252 F.3d at 273). "Thus, while bearing in mind the liberal pleading philosophy of the federal rules, the question of undue delay requires that we focus on the movant's reasons for not amending sooner." *Cureton*, 252 F.3d at 273. (internal citations omitted).

In *Cureton*, the court upheld the district court's denial of a motion for leave to file a second amended complaint when the motion was filed three years after the original complaint and was based on factual information known to the plaintiff for at least two and a half years. *Id*. at 269, 273; *see also Assadourian v. Harb*, 430 F. App'x 79,81 (3d Cir. 2011) (affirming district court's denial of a motion for leave to amend under either Rule 15 or Rule 16 and specifically noting, "it bears emphasizing that this represented [the plaintiff's] effort to amend his complaint for a *fourth* time" (emphasis in original)). Similarly, in *Lorenz v. CSX Corp.*, 1 F.3d 1406 (3d Cir. 1993), the court upheld the district court's denial of a motion for leave to amend. *Id*. at 1414. The proposed amendment was filed three years after the original complaint and almost two years after the complaint was amended for a second time. *Id*. Additionally, most of the operative facts were available to the plaintiff when the original complaint was filed, and all of the facts were available when the second amended complaint was filed. *Id*. Thus, even in the absence of a showing of prejudice, the court upheld the district court's denial of the plaintiff's motion to amend. *Id*. Conversely, several courts have overruled a district court's denial of a motion for leave to amend when the delay has been less than one year. *See Arthur v. Maersk, Inc.*, 434 F.3d 196, 204 (3d Cir. 2006) (involving a delay of eleven months); *Riley v. Taylor*, 62

5

F.3d 86, 90 (3d Cir. 1995) (involving a delay of between six months and one year); *Dole* 921 F.2d at 487 (involving a delay of between eight and nine months).

In this case, Tri-Realty has exhibited undue delay. As an initial matter, similar to the procedural posture in *Assadourian*, this is not Tri-Realty's first or even second attempt to amend its complaint; rather the proposed document would be the third amended complaint. Tri-Realty filed its original complaint in September 2011, more than four years before filing this Motion for Leave to File a Third Amended Complaint. Additionally, Tri-Realty amended its complaint in December 2011, and again in June 2014. Before receiving Ursinus's consent, through stipulation, to file the second amendment, Tri-Realty submitted a motion for leave to file the amendment, both parties filed briefs, and the Court held oral argument on the motion.

The proposed third amended complaint adds one additional claim under the Storage Tank Act, a claim the basis for which "Tri-Realty has only learned through discovery." Plf.'s Br. at 2. In its brief, Tri-Realty claims that, while it was aware when it filed its initial complaint that Ursinus was receiving insurance payments, it was unaware that Ursinus was receiving those payments because it had opted into the HOT Program. Tri-Realty alleges that this specific fact is the basis for asserting liability against Ursinus under the Storage Tank Act. While making these blanket assertions, Tri-Realty does not specify exactly when it became aware of this "new" fact, nor does it point to specific documents produced in discovery which form the basis for its newly found awareness.

While Tri-Realty asserts that it only became aware of the facts that form the basis of its Storage Tank Act claim through discovery, Ursinus cites to documents which demonstrate Tri-Realty was aware of Ursinus's involvement in the HOT Program, and had also researched the

6

scope and limits of insurance coverage for claims under the Storage Tank Act.[4]  Tri-Realty has possessed the factual information which serves as the basis for the Storage Tank Act claim that is the focus of this effort to file a <u>fourth</u> version of its complaint throughout the course of this entire litigation.  Thus, like the plaintiffs in *Cureton* and *Lorenz*, Tri-Realty has bypassed previous opportunities to amend its complaint with the addition of the Storage Tank Act claim, making the length of the delay in this case more analogous to the delays in *Cureton* and *Lorenz* than to those in *Arthur*, *Riley*, and *Dole*.

Having found that Tri-Realty failed to take advantage of its several opportunities to amend its complaint, the Court's inquiry now focuses on Tri-Realty's reasons for not amending sooner.  Tri-Realty's assertion that it has only learned the necessary facts for its Storage Tank Act claim through discovery is not supported by any specific evidence.  Indeed, Ursinus has cited documents which suggest the opposite.  Tri-Realty's attempts to justify its delay by claiming that the amendment would have been useless if filed before the disposition of the summary judgment motions do not pass muster.  While this might explain the delay if Tri-Realty had also provided evidence that it became aware of the necessary facts during the pendency of

---

[4] Billing records from Tri-Realty's counsel show that in early 2011, counsel was already investigating claims made by Ursinus to the Underground Storage Tank Indemnification Fund ("USTIF").  Def.'s Br. Ex. 2, 7-10.  The same billing records show that even earlier, in 2010, counsel had reviewed the "scope and limits for coverage of the USTIF under the Pennsylvania Storage Tank and Spill Prevention Act," and had also reviewed USTIF itself.  Def.'s Br. Ex. 2, 2.  The regulations which govern USTIF are contained in 25 Pa. Code §§ 977.1 – 977.61.  "This chapter applies to owners and operators of USTs, owners and operators of [heating oil tanks] that elect to participate in the Heating Oil Tank Optional Program, certified companies and distributors."  25 Pa. Code § 977.3.  Because heating oil tanks are specifically excluded from the definition of USTs within the Storage Tank Act, any investigation into USTIF should have alerted Tri-Realty that, if Ursinus was receiving insurance through USTIF, they would have had to have opted their heating oil tanks into the HOT Program.  Tri-Realty was aware that Ursinus was receiving insurance coverage through USTIF.  Def.'s Br. Ex. 3-4.  Thus, Tri-Realty's assertion, without any supporting documentation, that it only learned during discovery that Ursinus had opted into the HOT Program is not plausible and cannot justify the four-year delay in bringing a claim under the Storage Tank Act.

the motions for summary judgment, it does not explain Tri-Realty's failure to assert its Storage Tank Act claim when it filed its original complaint, its amended complaint, or even its modified amended complaint, filed just two months before Ursinus filed its motions for summary judgment. The documents cited by Ursinus show that Tri-Realty possessed the necessary information to assert its Storage Tank Act claim well before Ursinus filed its motions for summary judgment. If it believed the claim to be efficacious, Tri-Realty could and should have attempted to bring the Storage Tank Act claim when it filed its motion for leave to file a second amended complaint, if not before. The Court is by no means convinced that Tri-Realty's explanation for failing to amend its complaint earlier justifies the undue delay which has occurred.

Allowing Tri-Realty to amend its complaint yet again and add a claim under the Storage Tank Act would place an "unwarranted burden on the court." *Cureton*, 252 F.3d at 273. During the Court's scheduling conference held on October 16, 2015, both parties informed the Court that they would not need to file additional briefs on the motion to dismiss the state law claims, which has been held in abeyance since November 2013. If the proposed amendment is allowed, another round of briefing and oral argument would be sure to follow on the highly speculative Storage Tank Act claim. This would further delay even an answer from the defendant in this already four-year-old case, and would undermine the Court's "inherent power" to manage its docket and "get[] on with the business of deciding cases." *Eash v. Riggins Trucking Inc.*, 757 F.2d 557, 567 (3d Cir. 1985).

While Ursinus does not specifically argue that it will be unfairly prejudiced, and *Lorenz* makes it clear that prejudice is not necessary to deny a motion for leave to amend, the Court observes that there are a number of additional burdens that would accompany the proposed

amendment.[5]  The Court finds that the unexplained, undue delay, especially when viewed in combination with the potential burdens, justifies a denial of Tri-Realty's Motion for Leave to File a Third Amended Complaint.

### IV. CONCLUSION

Tri-Realty filed this Motion for Leave to File a Third Amended Compliant four years after initiating this lawsuit and over a year and a half after filing its second amendment.  For the foregoing reasons, the Court denies Tri-Realty's Motion for Leave to File a Third Amended Complaint.

BY THE COURT:

S/Gene E.K. Pratter
GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE

---

[5]  In addition to the additional effort and expense associated with litigating the proposed Storage Tank Act claim, the statute also carries a presumption of liability.  *See* 35 Pa. Stat. Ann. § 6021.1311(a) ("[I]t shall be presumed as a rebuttable presumption of law in civil and administrative proceedings that a person who owns or operates an aboveground or underground storage tank shall be liable, without proof of fault, negligence or causation, for all damages, contamination or pollution within 2,500 feet of the perimeter of the site of a storage tank containing or which contained a regulated substance of the type which caused the damage, contamination or pollution.").  This presumption shifts the burden of persuasion to the defendant. *Id*.  Such a shift at this point in the litigation could well work as a prejudice to Ursinus and the orderly progress of the case generally, in as much as this dispute has been in litigation for four years under the assumption that the burden of persuasion is and will be on Tri-Realty.